**THE LAW OFFICES OF GREGG A. PINTO**
Gregg A. Pinto
225 Broadway, 3rd Floor
New York, New York 10007
(646) 328-2434

**THE LAW OFFICE OF ELLIE SILVERMAN P.C.**
Ellie A. Silverman
401 Park Avenue S
New York, New York 10016
(215) 620-6616

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
WHETSEL WADE,

*Plaintiff,*

-against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, POLICE OFFICER KAMIL PAC,
Shield#:28872, SERGEANT TIMOTHY CECCHINI, Shield#:
613, POLICE OFFICER DERRICK RUSS, Shield#: 4535,
POLICE OFFICER TERIQ GRANT, Shield#: 12175 and
OFFICERS JOHN DOE (#1-4)( the name "John" and "Doe"
being fictitious, as the true names, shield numbers and officer
rankings are presently unknown),

*Defendants.*

------------------------------------------------------------------------------X

**FIRST
AMENDED
COMPLAINT**

JURY TRIAL
DEMANDED

*Civil Action No.* 19-cv-6489

Plaintiff **WHETSEL WADE,** by his attorneys **THE LAW OFFICES OF GREGG A.**

**PINTO** AND **THE LAW OFFICE OF ELLIE SILVERMAN, P.C.,** complaining of Defendants

**THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE**

**OFFICER KAMIL PAC, SHIELD#: 28872** (hereinafter, "**POLICE OFFICER PAC**"),

**SERGEANT TIMOTHY CECCHINI, SHIELD#: 28872** (hereinafter, "**SERGEANT**

**CECCHINI**"), **POLICE OFFICER DERRICK RUSS, SHIELD#: 4535** (hereinafter, "**POLICE**

**OFFICER RUSS**"), **POLICE OFFICER TERIQ GRANT, SHIELD#: 12175,** (hereinafter,

**"POLICE OFFICER GRANT"**) and **OFFICERS JOHN DOE (#1-4)** (hereinafter, **"OFFICERS DOE"**) respectfully alleges, upon information and belief:

## PRELIMINARY STATEMENT

1.  This is a civil rights action in which Plaintiff **WHETSEL WADE** seeks relief for Defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and of rights secured by the First, Fourth and Fourteenth Amendments to the United States Constitution, and of rights secured under the laws and Constitution of the State of New York. Plaintiff seeks damages, compensatory and punitive, affirmative and equitable relief, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 and § 1331, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.  Jurisdiction is also invoked herein pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

4.  Plaintiff respectfully requests that this Court exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any state court causes of action that arise from a common nucleus of operative facts that give rise to the federally based causes of action pleaded herein, and as against all parties that are so related to claims in this action within the original jurisdiction of this court that are formed as part of the same case or controversy.

5.  Venue herein is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c).

## JURY DEMAND

6.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ.

P. 38(b).

## PARTIES

7.     Plaintiff is 47 years old and at all times hereinafter mentioned was, and still is, a citizen of the

United States, residing at 802 Crescent Street, in the City of Brooklyn, County of Kings, and State

of New York.  Plaintiff is currently incarcerated at the Greene Correctional Facility in Coxsakie,

New York.

8.     Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a

municipal corporation duly incorporated and existing under and by virtue of the laws of the State

of New York.

9.     Defendant **NEW YORK CITY POLICE DEPARTMENT** was, and still is, at all times

relevant herein, a municipal corporation established and maintained by Defendant **THE CITY**

**OF NEW YORK**.

10.    Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a

municipal entity created and authorized under the laws of the State of New York. It is authorized

to maintain a police department, which acts as its agent in the area of law enforcement and for

which it is ultimately responsible. Defendant **THE CITY OF NEW YORK** assumes the risks

incidental to the maintenance of a police force and the employment of police officers as said risk

attaches to the public consumers of the services provided by Defendant **NEW YORK CITY**

**POLICE DEPARTMENT**.

11.    Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT,**

**POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS,**

**POLICE OFFICER GRANT** and **OFFICERS DOE** were, and still are, at all times relevant herein, duly appointed and acting officers, agents, servants, and employees of Defendant **NEW YORK CITY POLICE DEPARTMENT** a municipal agency of Defendant **THE CITY OF NEW YORK**.

12. Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT** and **OFFICERS DOE** were, and still are, at all times relevant herein, acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant **THE CITY OF NEW YORK,** were acting for, and on behalf of, and with the power and authority vested in them by Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

13. Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, AND POLICE OFFICER GRANT,** were, and still are, at all times relevant herein, male New York City Police Officers, assigned to the 75th precinct located at 1000 Sutter Avenue, Brooklyn, NY 11208.

13. **POLICE OFFICER PAC** was the arresting officer.

14. **POLICE OFFICER RUSS** was the invoicing officer on the property vouchers in this case and was present at the time of arrest of Plaintiff as **POLICE OFFICER PAC's** partner on or about November 16, 2016.

11. **POLICE OFFICER GRANT** was present at the time of the arrest of Plaintiff and **POLICE OFFICER PAC's** partner on or about November 16, 2016.

12.     Upon information and belief, **SERGEANT CECCHINI** was the Desk Sergeant present at the time Wade arrived at the 075 precinct and was logged in.

13.     **SERGEANT CECCHINI** maintained a supervisory role at the 075 precinct for the duration of Wade's imprisonment at the 075 precinct and often listed as the "supervisor approving" officer on behalf of the work performed by the employees of the **NEW YORK CITY POLICE DEPARTMENT** in this case.

14.     Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, AND POLICE OFFICER GRANT,** are in their official capacity and sued individually.

11.     Defendants **OFFICERS DOE** were, and still are, at all times relevant herein, employed by **THE CITY OF NEW YORK,** more specifically the **NEW YORK CITY POLICE DEPARTMENT** as New York City Police Officers, Sergeants, Captains and/or Detectives and were involved in the circumstances leading up to and including the investigation, arrest and prosecution of Plaintiff **WHETSEL WADE**.

11.     Defendants **OFFICERS DOE** are sued in their official capacity and sued individually.

11.     Upon information and belief, the following officers were and still are, at all times relevant herein, acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant **THE CITY OF NEW YORK,** acting for, and on behalf of, and with the power and authority vested in them by Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties and involved whether in a supervisory role or not, in some of the circumstances surrounding this incident, leading up to and including the investigation, arrest and prosecution of Plaintiff (the specific or exact involvement unknown at this time):

Sergeant Polanco of the 075 precinct;

Captain McCall;

Detective Jared Fox of 075 precinct;

Officer Jerlene Woolard;

Police Officer David Mills;

Sergeant George Tavares;

Officer Joseph Matthew; and

Police Officer Patrick Chilton.

## FACTS

15. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

16. The events which gave rise to this litigation occurred on or about November 16, 2016 and have not concluded.

17. On or about November 16, 2016, at approximately 1:15 P.M., Plaintiff was arrested at the 075 Precinct by Police Officer Pac, after first being apprehended/detained at the United States Probation Brooklyn office at or around 12:00 P.M. and transported to the 075 Precinct, 1000 Sutter Avenue, Brooklyn, New York.

18. At the Brooklyn office of the United States Probation department, Plaintiff was approached by plainclothes members of the New York City Police Department, including Defendant **POLICE OFFICER PAC**, and informed him that he needed to accompany them to the 075 Precinct.

19. Upon information and belief, without reasonable suspicion, without probable cause, without an arrest warrant, and without any threat or reasonable belief of unlawful activity, plainclothes members of the New York City Police Department, including Defendants Pac, Russ and Grant

and other police officers unknown at this time, pulled Plaintiff's arms violently behind his back and handcuffed him.

20.    Plaintiff was then shoved, pushed and his legs were pulled into the patrol vehicle.

21.    Upon information and belief, Plaintiff was not informed of nor read his Miranda Rights.

22.    Before being placed in the patrol vehicle, while in the patrol vehicle, and after exiting the patrol vehicle, Plaintiff made several complaints of the handcuffs being extremely tight.  He pleaded and requested for the handcuffs to be loosened, however, his requests were denied, resulting in severe wrist injuries and pain which lasted for several weeks thereafter.

23.    Plaintiff was transported to the 75th precinct located at 1000 Sutter Avenue, in the County of Kings, City of Brooklyn and State of New York..

24.    Plaintiff was unjustly and falsely arrested and maliciously and falsely charged with criminal offenses and otherwise subjected to an excessive and unreasonable custodial detention and all association therewith. The officers present at the time of the arrest were Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT,** and potentially one or more **OFFICERS DOE**.

25.    He was fingerprinted, photographed, and otherwise processed, placed in a holding cell and otherwise ignored and denied any explanation for such detention.

26.    Plaintiff was then subject to unlawful and inappropriate pat downs and searches, including but not limited to "strip searches" by Defendant Officers.

27.    Upon information and belief, Plaintiff was denied any and all requests to make a phone call.

28.    After Plaintiff was strip searched, defendant Police Officer Pac removed Plaintiff's wallet and took out all of Plaintiff's credit cards and public benefit cards.  Plaintiff was not given a voucher for these items, nor were they ever returned to him.  Later, when Plaintiff was leaving the precinct

to go to Central Booking, Plaintiff requested his wallet and Police Officer Pac shoved his wallet back into Plaintiff's pocket.  Unbeknownst to Plaintiff, the wallet was empty and he would never retrieve its contents or a voucher for said contents.

29.   Plaintiff was placed in an interview room and abandoned for several hours while being "held for questioning from the detectives upstairs."  Later, Plaintiff was removed from the interview room without being interviewed and was told that a supervisor was making the officers take Plaintiff to Central Booking

30.   After approximately eight (8) hours of detention at the precinct, Plaintiff was transported by Police Officers Morgan and D'Angelo to Central Bookings at around 8:30pm where again, he was fingerprinted, photographed, searched, and again placed into another holding cell where he spent approximately twenty-four (24) hours.

31.   Upon information and belief, at no point did Plaintiff resist arrest or disobey the arresting officer's commands.

32.   Upon information and belief, the cell was dirty, filled with bugs and otherwise grossly unsanitary.

33.   Upon information and belief, while in custody, Plaintiff was denied food, despite asking for food.

34.   Upon information and belief, while in custody, Plaintiff was denied water, despite asking for water.

35.   Upon information and belief, while in Central Bookings, Plaintiff was not informed of, nor, read his Miranda Rights, nor informed of what, if any, charges were being brought against him.

36.   Upon information and belief, after over thirty (30) hours of being detained without probable cause, under inhumane and otherwise unsanitary conditions, deprived of food, water, and any reason or explanation, Plaintiff was finally arraigned before a judge in Criminal Court.

37.     Plaintiff would spend the next six (6) days incarcerated until being Released on his own Recognizance (ROR) pursuant to C.P.L. § 180.80.

38.     Despite being released ROR, Plaintiff remained incarcerated due to a violation of his federal supervised release which was partially or entirely based upon this false arrest!  Plaintiff subsequently served more than two _years_ in federal prison for this violation of supervised release.

39.     After being arraigned, Plaintiff finally learned that he was being charged with possession of a controlled substance which did not belong to him and were allegedly recovered from the building where he resides.

40.     Defendants, including Defendant Police Officers, were fully aware that the controlled substance did not belong to Plaintiff and that there was an insufficient nexus between Plaintiff and the controlled substance that was recovered.

41.     Upon information and belief, Defendants had been investigating a shooting that took place in the vicinity of Plaintiff's residence on or about November 14, 2016.

42.     Upon information and belief, the victim of the shooting (hereinafter "Victim"), whose identity is not known to Plaintiff, fled to the building where Plaintiff resides.  While inside the building the Victim discarded his jacket which contained his identification and his controlled substances in the basement of the building.

43.     Upon information and belief, the Victim was transported to the hospital.  Once members of the Defendant NYPD discovered the Victim's jacket, identification and drugs, they called the hospital to arrest the Victim – but, unfortunately for the Defendants, the Victim had fled the hospital, never to be found again.

44.     Out of sheer embarrassment, the Defendants became determined to make an arrest for the controlled substances found, despite knowing that Plaintiff was not the suspect.

45.    Upon information and belief, the Defendants obtained a Search Warrant for the premises, and upon executing their search on or about November 15, 2016, they destroyed the premises.  The defendants broke pipes, tore holes in couches, and damaged appliances such as the washing machine.

46.    The Defendants did recover a piece of mail with Plaintiff's name on it from a bedroom.  This was not surprising considering Plaintiff maintained a residence in the building (but was by no means the sole occupant of the building)

47.    The Defendants, acting with reckless disregard of Plaintiff's civil rights, determined that this one piece of mail in one bedroom could serve as evidence that Plaintiff was the owner of the drugs recovered from the basement.

48.    The Defendants were unreasonable, reckless, and knowingly wrong.  <u>On February 16, 2017, the criminal case against Plaintiff for possession of a controlled substance was dismissed and sealed.</u>  Nevertheless, the damage was already done because it triggered his federal incarceration and unconstitutional and false imprisonment.

49.    Upon information and belief, despite having all of the above information, Defendants failed to relay this information to the assigned assistant district attorney.

50.    Upon information and belief, Defendants mislead, coerced and/or failed to properly inform the assigned district attorney.

51.    Defendants failed to give the assigned district attorney the details of the results of their investigation leading the assigned district attorney to believe that plaintiff was the true owner of the controlled substance.

52.    Defendants failed to investigate leads, which would have located the Victim and led to his arrest for possession of a controlled substance.

53.    Defendants failed to turn over information, which would have proven plaintiff's innocence.

**AS AND FOR A FIRST CAUSE OF ACTION**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**
**BY THE CITY OF NEW YORK**

54.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

55.    At all times material to this complaint, Defendant **THE CITY OF NEW YORK** acting through its police department and through Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** had in effect actual and/or *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

56.    At all times material to this complaint, Defendant **THE CITY OF NEW YORK** acting through its police department, and through Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** had in effect and/or *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise and discipline employees and police officers, and of failing to inform the individual Defendants' supervisors of the need to train, screen, supervise and discipline said Defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

57.    Defendant **THE CITY OF NEW YORK** acting through its police department, and through Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** being aware that such lack of training, screening, supervision, and discipline leads to improper conduct, acted with deliberate indifference in failing to establish a program of effective training, screening, supervision and

discipline. Defendant **THE CITY OF NEW YORK** being aware that the persistent and substantial risk of improper detention of persons based upon insufficient or incorrect information, and effective training, screening, supervision and discipline would lessen the likelihood of such occurrences. There are recurrent circumstances which involve such potential danger to the constitutional rights of citizens, more specifically Plaintiff and which are officially tolerated by Defendant **THE CITY OF NEW YORK**. Such policies, practices, customs or usages were a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the harm/damages alleged herein, in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

58.     As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical, psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A SECOND CAUSE OF ACTION**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**
**BY NEW YORK CITY POLICE DEPARTMENT**

59.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

60.     At all times material to this complaint, Defendant **NEW YORK CITY POLICE DEPARTMENT** acting through Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** had in effect actual and/or *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

61.     At all times material to this complaint, Defendant **NEW YORK CITY POLICE**

**DEPARTMENT** acting through Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** had in effect and/or *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise and discipline employees and police officers, and of failing to inform the individual Defendants' supervisors of the need to train, screen, supervise and discipline said Defendants.  The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

62.    Defendant **NEW YORK CITY POLICE DEPARTMENT** acting through Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** being aware that such lack of training, screening, supervision, and discipline leads to improper conduct, acted with deliberate indifference in failing to establish a program of effective training, screening, supervision and discipline. Defendant **NEW YORK CITY POLICE DEPARTMENT** being aware that the persistent and substantial risk of improper detention of persons based upon insufficient or incorrect information, and effective training, screening, supervision and discipline would lessen the likelihood of such occurrences. There are recurrent circumstances which involve such potential danger to the constitutional rights of citizens, more specifically Plaintiff and which are officially tolerated by Defendant **NEW YORK CITY POLICE DEPARTMENT**. Such policies, practices, customs or usages were a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the harm/damages alleged herein, in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

63.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical,

psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A THIRD CAUSE OF ACTION**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983**
**BY POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS AND**
**POLICE OFFICER GRANT**

64.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

65.      By his conduct and actions in arresting, searching, imprisoning, failing to intercede on behalf of Plaintiff and in failing to protect him from the unjustified and unconstitutional treatment he received at the hands of Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS AND POLICE OFFICER GRANT** acting with animus, and under color of law and without lawful justification, intentionally, maliciously, and with deliberate indifference to and/or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiff's due process clause and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

66.     As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical, psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION and 42 U.S.C. § 1983**
**BY OFFICERS JOHN DOE (#1-4)**

67.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

68.   By his conduct and actions in arresting, searching, imprisoning, failing to intercede on behalf of Plaintiff and in failing to protect her from the unjustified and unconstitutional treatment he received at the hands of Defendants **OFFICERS JOHN DOE (#1-4),** acting with animus, and under color of law and without lawful justification, intentionally, maliciously, and with deliberate indifference to and/or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiff's due process clause and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

69.   As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A FIFTH CAUSE OF ACTION
### FALSE ARREST and FALSE IMPRISONMENT

70.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

71.   By the actions described above, Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** caused Plaintiff to be falsely arrested and falsely imprisoned without probable cause, without reasonable suspicion, illegally, without any proper claims, and without any right or authority to do so.  The acts and conduct of Defendants were the direct and proximate cause of injury and/or damage to Plaintiff and violated his federal, statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

72.   As a result of the foregoing, Plaintiff was deprived of his liberty, suffered a loss of quality and/or

enjoyment of life, economic injury, physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**DERELICTION OF DUTY. DEPRAVED/DELIBERATE INDIFFERENCE**
**AND FAILURE TO INTERCEDE/INTERVENE**

73.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

74.    Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** were under a duty of safeguarding the public and ensuring the appropriate execution of Defendant **NEW YORK POLICE DEPARTMENT**'s role.  Plaintiff duly relied on Defendants' fulfillment of their policing duties.

75.    Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** had an affirmative duty to intercede when Plaintiff's constitutional rights were being violated in Defendants' presence.

76.    At the time of the incident, Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** were observing and aware of the wrongful acts against Plaintiff.

77.    At the time of the incident, Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE**

neglected to intervene on Plaintiff's behalf in dereliction of their duty to Plaintiff and in depraved/deliberate indifference to Plaintiff's well-being.

78.   Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** violated Plaintiff's constitutional rights when they failed to intercede/intervene and prevent the violation or further violation of Plaintiff's constitutional rights and the injuries or further injuries caused as a result of said failure.

79.   Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** had an affirmative duty to intercede when Plaintiff's constitutional rights were being violated in Defendants' presence by falsifying evidence of probable cause to arrest and prosecute Plaintiff.

80.   As a result of the foregoing, Plaintiff was deprived of his liberty, suffered a loss of quality and/or enjoyment of life, economic injury, physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### VIOLATION OF PLAINTIFF'S RIGHTS PURSUANT TO
### THE COMMON LAW OF THE STATE OF NEW YORK
### VIA BATTERY

81.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

82.   Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT,** are vicariously liable to Plaintiff for the individual Defendants' **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE,** common tort of battery via the principle of

*respondeat superior* and that New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

83. Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** committed a battery on Plaintiff by him being handcuffed, pushed, shoved, fingerprinted and strip-searched. The deprivation of food, water and sanitary conditions while in custody, was harmful, un-consented, and unjustified and in so doing, Defendants violated the laws and Constitution of the State of New York and otherwise violated Plaintiff's rights under New York Law.

84. That by reason of the battery, Plaintiff was harmed physically and emotionally, all while unlawfully and illegally detained, and that Plaintiff was otherwise harmed as a result of the Defendants' actions.

85. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered a loss of quality and/or enjoyment of life, economic injury, physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### VIOLATION OF PLAINTIFF'S RIGHT
### UNDER NEW YORK STATE LAW
### VIA ASSAULT

86. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

87. That on the aforementioned date, time and place, Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** committed the tort of assault against Plaintiff by causing him to be in fear and/or apprehension of imminent and offensive harm and in so doing, Defendants violated the laws and Constitution of the State of New York and otherwise violated Plaintiff's rights under

New York Law.

88.   That Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** are vicariously liable to Plaintiff for the individual Defendants' **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE ,** common law tort of assault via the principle of *respondeat superior* and that New York CPLR § 1601 does not apply pursuant to the exception provided by CPLR § 1602(1)(b).

89.   That by reason of the aforesaid committed by Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE ,** Plaintiff suffered and continues to suffer physical injury and that he was otherwise damaged.

90.   As a result of the foregoing, Plaintiff was deprived of his liberty, suffered a loss of quality and/or enjoyment of life, economic injury, physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A NINTH CAUSE OF ACTION
### NEGLIGENCE

91.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

92.   Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** negligently caused injuries and otherwise damaged Plaintiff. The acts and conduct of Defendants were the direct and proximate cause of injury to Plaintiff and violated his statutory and common law rights as guaranteed by the

laws and Constitution of the State of New York.

93.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical, psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A TENTH CAUSE OF ACTION**
**VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS**

94.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as thought fully stated herein.

95.    Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** individually and collectively are liable pursuant to 42 U.S.C. § 1983 for abuses against Plaintiff that shock the conscience in violation of the Fourteenth Amendment to the United States Constitution.

96.    Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** individually and collectively are liable for abuses against Plaintiff that shock the conscience in violation of Article 1, § 5 of the New York State Constitution.

97.    Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE,** individually and collectively are liable for abuses against Plaintiff that shock the conscience in violation of New York law, rules and regulations.

98. Defendants subjected Plaintiff to criminal charges on the basis of false and/or misleading evidence that was deliberately fabricated by the defendants.

99. Defendants did, with malice, compose and swear out a false criminal complaint against Plaintiff and institute the criminal case against Plaintiff and that there was intent to do harm without justification. The defendants deliberately fabricated evidence that was used to criminally charge and prosecute the plaintiff.

100. Plaintiff's property was destroyed and was thus, deprived of his property without probable cause.

101. In this case, there was fabrication of evidence, false swearing, mishandling of property, and withholding exculpatory evidence from prosecutors.

102. Defendants failed to disclose evidence inconsistent with the plaintiff's guilt, falsely reported facts in the arresting documents, or otherwise falsely reported facts in the documents, maliciously concealed material evidence and maliciously mishandled his property.

103. Because no reasonably competent officer could disagree that an officer cannot properly rely on evidence one knows to be false, qualified immunity cannot attach. Additionally, there is no immunity attached to those who falsify affidavits and fabricate evidence.

104. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered loss of quality and/or enjoyment of life, physical injury, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

105. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as thought fully stated herein.

106.    At all times herein mentioned, Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** owed Plaintiff a duty to manage, control, and supervise Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** .

107.    Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** negligently hired, screened, retained, disciplined, supervised and trained Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** .

108.    At all times herein mentioned, Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** owed Plaintiff a duty to hire qualified and sufficient personnel in connection with the operation, management control, teaching at and/or supervision of Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** .

109.    At all times herein mentioned, Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** owed Plaintiff a duty to train their employees so as to enable them to properly maintain order and control.

110.    At all times herein mentioned, Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** owed Plaintiff a duty to promulgate proper and/or adequate rules and regulations governing the proper care, guidance and/or supervision to be provided and rendered by those agents, servants, officers and/or employees hired as New York City Police Officers.

111. At all times herein mentioned, Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** owed Plaintiff a duty to provide a safe and proper environment.

112. At all times herein mentioned, Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** owed Plaintiff a duty to prevent from being assaulted and battered while in their custody and control.

113. At all times relevant hereto, Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** and/or said Defendants' agents, servants, employees and/or licensees were, jointly, severally and concurrently, negligent, careless and reckless in individually and collectively breaching each and every duty owed to Plaintiff.

114. The aforesaid occurrence was caused wholly and solely by reason of the negligence of Defendants **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** and/or said Defendants' agents, servants, employees and/or licensees, without any fault or negligence on the part of Plaintiff contributing thereto.

115. Defendant **THE CITY OF NEW YORK** acting through Defendant **NEW YORK CITY POLICE DEPARTMENT** and through Defendants **POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** had *defacto* to policies, practices, customs and usage, which were a direct and proximate cause of the unconstitutional conduct alleged herein.

116. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered loss of quality and/or enjoyment of life, physical injury, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged.

## AS AND FOR A TWELFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL HARM

117.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as thought fully stated herein.

118.   Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** negligently caused emotional distress and damage to Plaintiff. The acts and conduct of Defendants were the direct and proximate cause of emotional injury to Plaintiff and violated his statutory and common law rights as guaranteed by the laws in the U.S. Constitution, the Constitution of the State of New York, and under the Charter, laws, rules and regulations of the City of New York.

119.   As a result of the foregoing, Plaintiff was deprived of his liberty, suffered loss of quality and/or enjoyment of life, physical injury, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL HARM

120.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as thought fully stated herein.

121.   Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, DEFENDANTS POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** knowingly, unreasonably and maliciously sought to disturb Plaintiff by their individual and collective outrageous conduct.

122.   This conduct includes, without being limited to, assaulting and battering Plaintiff while he was bound by handcuffs in their custody; unreasonably detaining him; depriving him of food, water and proper medical care, wrongfully arresting him, destroying his property, prolonged unlawful detention on Riker's Island and also triggering the federal detention; delayed and prolonged malicious  prosecution, as well as subjecting him to multiple unreasonable acts and other intimidation tactics and violated his statutory and common law rights as guaranteed by the laws in the U.S. Constitution, the Constitution of the State of New York, and under the Charter, laws, rules and regulations of the City of New York.

123.   Defendants **THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE** have caused Plaintiff humiliation, anxiety, fear, sleeplessness and severe distress.

124.   Courts have held that continuous and coercive harassment *can* establish an IIED cause of action. *Alexander v. Unification Church of America,* 634 F.2d 673, 678-679 (2d Cir.1980) (filing of harassing lawsuits, constant surveillance, patrolling of plaintiffs' homes);*Green v. Fischbein Olivieri Rozenholc & Badillo,* 119 A.D.2d 345, 507 N.Y.S.2d 148 (1st Dep't 1986) (baseless eviction proceedings against plaintiff-tenant by landlord, disruption in services, deterioration of living conditions, interference with mails, verbal abuse of plaintiff and his guests). *But see, Gay v. Carlson,* 60 F.3d 83, 89 (2d Cir.1995) (finding plaintiff had not established an IIED claim where "[a]ll that plaintiff alleges that any of the defendants has done is lodge official complaints about plaintiff's conduct or discuss the basis of those complaints with others.").

125.   The acts and conduct of Defendant were the direct and proximate cause of continuous emotional distress emotional injury to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

126. Upon information and belief, Defendants committed multiple acts against Plaintiff, which invaded his interests and inflicted injuries upon him throughout all stages of investigation, the continuous detention and the hearings, and trials, which cumulatively amounted to intentional infliction of emotional harm and/or distress.

127. The favorable termination of the proceedings was the crux of his claim.

128. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered loss of quality and/or enjoyment of life, physical injury, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION**
**MALICIOUS PROSECUTION**
**UNDER THE UNITED STATES CONSTITUTION and 42 U.S.C. § 1983**
**THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT,**
**DEFENDANTS POLICE OFFICER PAC, SERGEANT CECCHINI, POLICE**
**OFFICER RUSS, POLICE OFFICER GRANT, AND OFFICERS DOE**

129. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

130. By the actions described above, Defendants caused Plaintiff to be maliciously prosecuted without any probable cause, without reasonable suspicion, without any proper claims, without any right or authority to do so, illegally and with malice.

131. By the actions described above, Defendants initiated a prosecution against Plaintiff.

132. By the actions described above, Defendants lacked probable cause to believe the proceeding could succeed.

133. Defendants arrested and issued legal process in order to obtain collateral objectives outside the legitimate ends of the legal process and intimidating Plaintiff for their personal interest and further to prevent Plaintiff from disclosing the aforementioned evidence of their misconduct.

134. Defendants acted with intent to do harm to Plaintiff without excuse or justification.

135. The prosecution was ultimately terminated in favor of Plaintiff.

136. Defendants, acting with animus, and under color of law and without lawful justification, intentionally, maliciously, and with deliberate indifference to and/or a reckless disregard for the natural and probable consequences of his acts, caused injury and damage due to this malicious prosecution in violation of Plaintiff's due process clause and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

137. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A FIFTEENTH CAUSE OF ACTION**
**EXCESSIVE FORCE AND UNCONSTITUTIONAL CONDITIONS OF**
**CONFINEMENT**

138. Plaintiff Mr. Wade repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

139. Throughout the period of his imprisonment and/or detention, Plaintiff was continuously subjected to excessive and unreasonable detention and to multiple excessive and unnecessary and unreasonable acts of physical force (while in detention), and to unnecessary and unreasonable and excessive terms and conditions of his imprisonment at the hands of Defendants under the color of state law, in violation of his rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 USC § 1983.

140. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
### CLAIM FOR MONELL LIABILITY

141. In this case, there was: Police witnesses failing to make full and complete statements – witness tampering and/or intimidation; Detectives withholding evidence and/or misrepresenting or falsifying evidence; Overall inadequate police work and inadequate prosecutorial work-up of the case; and the "probable cause" used as a basis for Mr. Wade's arrest was obtained through deceptive measures and tactics.  Even more so, the determination to arrest "someone" at all costs is of a result of a systemic problem with the "quotas" and COMPSTAT program.

142. The acts complained of were carried out by the aforementioned defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and NYPD, all under the supervision of ranking officers of the NYPD.

143. The aforementioned customs, practices, procedures and rules of the City and NYPD include, but are not limited to: 1) arresting persons known to be innocent in order to meet "productivity goals"; 2) falsely swearing out criminal complaints and/or lying and committing perjury during sworn testimony to protect other officers and meet productivity goals; 3) failing to supervise, train, instruct and discipline police officers thereby  encouraging  their  misconduct  and exhibiting deliberate indifference towards the  constitutional  rights  of  persons  within  the officers' jurisdiction; 4) discouraging police officers from reporting the corrupt or unlawful acts of other officers; 5) retaliating against  officers who report police misconduct; and 6) failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented with proper supervision.

144. At the time of the aforementioned constitutional violations, the **THE CITY OF NEW  YORK** and NYPD were and had been on notice of such unconstitutional conduct,  customs,  and  de facto policies, such that the failure of City and NYPD to take appropriate remedial action

amounted to deliberate indifference to the constitutional rights of persons with whom the police come in contact. In light of the extensive pattern of well-settled, pervasive customs and policies causing constitutional violations, documented in part infra, the need for more effective supervision and other remedial measures was patently obvious, but the **THE CITY OF NEW YORK** and **NEW YORK CITY POLICE DEPARTMENT** made no meaningful attempt to prevent future constitutional violations.

145.    The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented by the following civil rights actions and parallel prosecutions of police officers:

146.    a) <u>Colon v. City of New York</u>, 9-CV-0008 (JBW)(E.D.N.Y) (in an Order dated November 29, 2009 denying the City's motion to dismiss on Iqbal/Twombley grounds, wherein the police officers at issued were and prosecuted for falsifying evidence, the Honorable Jack B. Weinstein wrote:

147.    'Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department.

148.    Despite numerous inquiries by commissions and strong reported efforts by the present administration— through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

149.    b) <u>McMillan v. City of New York</u>, 04-cv-3990 (FB)(RML) (E.D.N.Y.)(officers fabricated evidence

against an African-American man in Kings County and initiated drug charges against him, despite an absence of an quantum of suspicion);

150.   c) <u>Richardson v. City of New York</u>, 02-CV-3651 (JG)(CLP) (E.D.N.Y.)(officers fabricated evidence including knowingly false sworn complaints, against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

151.   The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the practice or custom of officers lying under oath, falsely swearing out criminal complaints or otherwise falsifying or fabricating evidence, are further evidenced, inter alia, by the following:

152.   a) Morgan Cloud, The Dirty Little Secret, 43 EMORY L.J. 1311, 1311-12 (1994) ("Judges, prosecutors, defense lawyers, and repeat offenders all know that police officers lie under oath."); Jerome H. Skolnick, Deception by Police, CRIM. JUST. ETHICS, Summer/Fall 1982, at 40, 42 (concluding that police "systematic[ally]" perjure themselves to achieve convictions); ALAN M. DERSHOWITZ, THE ABUSE EXCUSE 233 (Hachette Book Group 1994) (suggesting that "recent disclosures about rampant police perjury cannot possibly come as any surprise" to those who have practiced criminal law in state or federal courts); ALAN M. DERSHOWITZ, THE BEST DEFENSE xxi- xxii (Random House  1983) ("Almost all police lie about whether they violated the Constitution in order to convict guilty defendants."); Deborah Young, Unnecessary Evil: Police Lying in Interrogations, 28 CONN. L. REV. 425, 427 (1996) (asserting that "the reported cases of police lying represent only a fraction of the actual cases in which police lying occurred"); David Kocieniewski, Perjury Dividend-A Special Report, N.Y. TIMES,   Jan.5, 1997, at A1 (noting that according to one New York police officer, "lying under oath was standard procedure"); Lie Detectors Could Curb Police Perjury, USA TODAY, Aug. 1, 1996, (Magazine), at 13 ("[M]any experienced trial lawyers have said they believe police officers frequently lie on the

stand."); Joseph D. McNamara, Has the Drug War created an Officer Liars' Club?, L.A. TIMES, Feb. 11, 1996, at M1 (noting recent perjury scandals have surfaced in police departments in Los Angeles, Boston, New Orleans, San Francisco, Denver, New York, and other large cities; and stating "[H]undreds of thousands of law-enforcement officers commit felony perjury every year testifying about drug arrests.").

153.    b) The Mollen Commission concluded that police perjury and falsification of official records is probably the most common form of police corruption facing the criminal justice system.  It concluded:

154.    Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their superiors. Corrupt and honest officers told us that their supervisors knew or should have known about falsified versions of searches and arrests and never questioned them.1 {…} What breeds this tolerance is deep-rooted perception among many officers of all ranks within the Department that there is nothing really wrong with compromising the facts to fight crime in the real world. Simply put, despite devastating consequences of police falsifications, there is a persistent belief among officers that it is necessary and justified, even if it is unlawful. As one dedicated officer put it, police  officers  often  view  falsification  as,  to  use  his  words,  "doing  God's  work"  –  doing whatever it takes to get the suspected criminal off the streets. This is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that? They're guilty."   *See,* Mollen Commission Report pgs 36-41.

155.    The existence of the aforesaid unconstitutional customs and policies, specifically with regard to "productivity goals," may be further inferred from the following: Deputy Commissioner Paul J.

Browne has repeatedly admitted that NYPD commanders are permitted to set "productivity goals."1

156.    The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the failure to supervise, train, instruct, and discipline police officers, encouraging their misconduct, and exhibiting deliberate indifference towards the constitutional rights of persons with whom officers come into contact are further evidenced, inter alia, by the following:

157.    a) In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noticed a "widespread… custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, NYPD Commissioner Raymond Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."

158.    b) Regarding Defendant City's tacit condonement and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a City agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct. When it does, however, Commissioner Kelly controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during Kelly's tenure, only one quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008.

---

1 Jim Hoffer NYPD Officer claims pressure to make arrests WABC·TV Eyewitness News, March 22010, available at http:J/abclocal.go.com/Wabc/story?section=news/investigators&id=73053S6 ("Police Officers like others who receive compensation are provided productivity goals and they are expected to work").

Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009. As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[2]

159.     The existence of the above-described de facto unlawful policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the NYPD and defendant **THE CITY OF NEW YORK**, including without limitation, the Police Commissioner.

160.     The actions of Defendants, resulting from and taken pursuant to the above-mentioned de facto policies and/or well-settled and widespread customs and practices of the City, are implemented by members of the NYPD engaging in systematic and ubiquitous perjury, both oral and written, to cover up federal law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates. They do so with    the knowledge and approval of their supervisors, commanders and Commissioner who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up

---

2 Daily News, Editorial: City Leaders Must Get Serious About Policing the Police, August 20, 2008.

civil rights violations perpetrated by themselves, fellow office supervisors and/or subordinates against those civilians.

161.    All of the foregoing acts by defendants deprived Plaintiff of his federally protected rights, including, but limited to, the constitutional rights enumerated herein.

162.    Defendant **THE CITY OF NEW YORK** knew or should have known that the acts alleged herein would deprive Plaintiff of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

163.    Defendant **THE CITY OF NEW YORK** is directly liable and responsible for the acts of Defendants, as it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules     and regulations of the City and NYPD, and to require compliance with the Constitution   and    laws of the United States.

164.    Despite knowledge of such unlawful de facto policies, practices, and/or customs, these supervisory and policy-making officers and officials of the NYPD and the **THE CITY OF NEW YORK**, including the Commissioner, have not taken steps to terminate these  policies, practices and/or customs, do not discipline individuals who engage in such polices,   practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead  approve and ratify these policies, practices and/or customs through their active encouragement  of,  deliberate  indifference  to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in the City of New York.

165.    The aforementioned Defendant's **THE CITY OF NEW YORK** policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their

misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, Defendants felt empowered to arrest Plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of Plaintiff's constitutional rights.

166.    Pursuant to the aforementioned **THE CITY OF NEW YORK** policies, practices and/or customs, the officers failed to intervene in or report Defendants' violations of Plaintiff's rights.

167.    Plaintiff's injuries were a direct and proximate result of the defendant **THE CITY OF NEW YORK**'s wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant **THE CITY OF NEW YORK** to properly supervise, train and discipline their police officers.

168.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical injury,  psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all Defendants:

a.   Compensatory damages;

b.   Punitive damages;

c.   The convening and empanelling of a jury to consider the merits of the claims herein;

d.   Costs, interest and attorneys' fees;

e.   Such other further relief as this court may deem appropriate and equitable.

Dated: New York, New York
          August 28, 2020

Respectfully submitted,

**The Law Offices of Gregg A. Pinto**

By:     _/s/ Gregg A. Pinto_____
        Gregg A. Pinto
        225 Broadway, 3rd Floor
        New York, NY 10007
        *Co-Counsel for Plaintiff*
        Telephone:  (646) 328-2434
        Facsimile:  (212) 898-0117
        pinto@pintolawoffices.com

**The Law Office of Ellie Silverman, PC**

By:     _/s/ Ellie Silverman_____
        Ellie A. Silverman
        401 Park Avenue S
        New York, NY 10016
        *Co-Counsel for Plaintiff*
        Telephone: (215) 620-6616
        ellie@elliesilvermanlaw.com